IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 19, 2003 Session

## STATE OF TENNESSEE v. ANDREW PHILLIP STOVER

**Direct Appeal from the Criminal Court for Washington County**
**No. 27424     Lynn W. Brown, Judge**

**No. E2002-02821-CCA-R3-CD**
**November 10, 2003**

The defendant pled guilty to the sale of less than .5 gram of a Schedule II controlled substance, a Class C felony, and two counts of the sale of a Schedule VI controlled substance, Class E felonies, receiving an effective sentence of five years in the Department of Correction. Following a sentencing hearing, the trial court granted the defendant's request for judicial diversion, concluding he was eligible for diversion because he had not previously been convicted of a felony or a Class A misdemeanor and his history and circumstances demonstrated he was a suitable candidate for judicial diversion. The State appealed, arguing that the defendant was eligible for diversion only because the trial court modified his prior conviction from a Class A misdemeanor to a Class C misdemeanor. Following our review, we affirm the order of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; and Joe C. Crumley, Jr., District Attorney General, for the appellant, State of Tennessee.

Mark D. Slagle, Johnson City, Tennessee, for the appellee, Andrew Phillip Stover.

## OPINION

## FACTS

On January 9, 2001, the Washington County Grand Jury indicted the defendant, Andrew Stover, on one count of the sale of 2.1 grams of cocaine, a Class B felony, and two counts of the sale of marijuana, Class E felonies, alleging that the offenses occurred on or about January 3, January 31, and March 24, 2000, respectively. Pursuant to a negotiated plea agreement, the defendant pled guilty on September 20, 2002, to the sale of less than one-half gram of cocaine, a Class C felony, and two

counts of the sale of marijuana, Class E felonies, and was sentenced to concurrent terms of five years for the Class C felony and one year for each Class E felony.

At the probation hearing on November 1, 2002, defense counsel advised the trial court that the defendant's two prior convictions, adult driving while impaired and leaving the scene of an accident with property damage over $400, had occurred during the same period of time as the instant offenses. Counsel contended that the defendant had undergone a difficult six-month period in his life, but had straightened himself out with the help of his family before the indictments in the instant case had been issued. Upon questioning by the trial court, the defendant explained the two days he had served in jail for leaving the scene of an accident had shocked him into realizing he had a problem and needed help. In order to straighten himself out, he voluntarily left Tennessee and went to Florida, "five hundred (500) miles away from everything [he] kn[e]w," where he spent almost five weeks living with his parents. The defendant said he informed his parents of his drug problem and his purpose for staying with them when he went to Florida. Both of the defendant's parents were present at the probation hearing, and one of them confirmed to the trial court that the defendant's statements were true.

The mother of the defendant's child was also present in support of the defendant at the probation hearing. The defendant told the trial court that he had legitimated his child, who was now four years old. He said he and the child's mother had been together "off and on for a long time" and, even when not romantically involved, were civil to each other and maintained a friendly relationship. Defense counsel informed the court that the defendant paid child support and was current with his payments. The defendant said he was a high school graduate, was currently attending East Tennessee State University, and was working full-time as a server at Grady's Restaurant where he was being trained for a management position. He said he had last used drugs sometime in the middle of 2000. Defense counsel additionally informed the court that the defendant had successfully completed a year's probation for his conviction for leaving the scene of an accident, which had involved drug-testing.

After the trial court announced that it was going to place the defendant on five years probation, defense counsel requested that the defendant be granted judicial diversion. In support, he introduced certified copies of the judgments for the defendant's two prior convictions, stating that the defendant had pled guilty to adult driving while impaired, a Class B misdemeanor, and leaving the scene of an accident with property damage over $400. Counsel stated that, although the defendant had been sentenced to eleven months, twenty-nine days for the leaving the scene of an accident conviction, the offense was a Class C, rather than a Class A, misdemeanor according to Tennessee Code Annotated section 55-10-102. The trial court agreed with this analysis, finding that the defendant was eligible for diversion since his prior conviction for leaving the scene of an accident was a Class C misdemeanor, although he had received a sentence of eleven months, twenty-nine days.[1] Additionally, the trial court found that the defendant was a suitable candidate for diversion based, in part, on his positive social, employment, and educational history, as well as his

---

[1] The defendant apparently served two days of this sentence in jail and the remainder on supervised probation.

history of having recognized and overcome his drug problem on his own. Accordingly, the trial court granted the defendant judicial diversion with the condition, which defense counsel subsequently met, that the court be provided with a Tennessee Bureau of Investigation letter of certification that the defendant was eligible for judicial diversion. Thereafter, the State filed a timely appeal to this court, challenging the trial court's decision to grant the defendant's request for judicial diversion.

## ANALYSIS

The State argues on appeal that the defendant was ineligible for diversion because, by the State's interpretation, he had previously been convicted in the General Sessions Court of Carter County of a Class A misdemeanor, which the trial court had no authority to modify to a Class C misdemeanor. The defendant responds, *inter alia*, that the trial court merely recognized the offense to which he pled guilty was a Class C misdemeanor for which he received an illegal sentence of eleven months, twenty-nine days. We will review these contending arguments.

Tennessee Code Annotated section 40-35-313 provides that, following a determination of guilt by plea or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A) (Supp. 2002). A qualified defendant is one who pleads guilty or is found guilty of a misdemeanor or Class C, D, or E felony; has not been previously convicted of a felony or a Class A misdemeanor; and is not seeking deferral for a sexual offense or a Class A or B felony. Id. § 40-35-313(a)(1)(B). If the defendant successfully completes the period of probation, the trial court is required to dismiss the proceedings against him, and the defendant may have the records of the proceedings expunged. Id. § 40-35-313(a)(2), (b).

The record reflects the defendant was charged with DUI, first offense, and "leaving the scene of an accident with property damage" and pled guilty on July 10, 2000, in the Carter County General Sessions Court to adult driving while impaired and "leaving the scene over $400." Under Tennessee Code Annotated section 55-10-418(d)(1) (1997) (repealed July 1, 2003), a first conviction for adult driving while impaired is a Class B misdemeanor. Additionally, leaving the scene of an accident with property damage over $400 is a Class C misdemeanor, according to Tennessee Code Annotated section 55-10-102, which provides in pertinent part:

> (2) Any person failing to stop or to comply with the requirements of subsection (a) under such circumstances, in which damage done to vehicles or property not owned or operated by the person charged with violation of this section exceeds four hundred dollars ($400) or would appear to a reasonable person to exceed four hundred dollars ($400), commits a Class C misdemeanor and in addition thereto may be punished pursuant to the provisions of § 55-10-101(c).

Tenn. Code Ann. § 55-10-102(b)(2) (1998).

The State is correct in asserting that the punishment imposed for the leaving the scene of an accident conviction was for that of a Class A misdemeanor, which would disqualify the defendant from diversion, rather than that of a Class C misdemeanor, which would not. Thus, based upon the punishment imposed, the State argues that the conviction was for a Class A misdemeanor and that the defendant's denying this fact constitutes a collateral attack on the conviction, for which the defendant has followed the wrong avenue. We respectfully disagree with this analysis, noting first that the State does not identify the misdemeanor of which it contends the defendant was convicted. Leaving the scene of an accident with property damage is a Class C misdemeanor regardless of the amount of damage done, with the only difference being that leaving the scene of an accident in which the property damage exceeds $400 may carry the additional punishment of the revocation of the defendant's driver's license. See Tenn. Code Ann. §§ 55-10-101(c), -102(b)(2). Likewise, we disagree that the defendant's arguing that this conviction is for a Class C misdemeanor amounts to a collateral attack of it. Rather, he is contending that it is of a lesser class than that asserted by the State, unlike in the authorities cited by the State in this regard wherein the validity of the convictions themselves were being attacked. We, therefore, agree with the defendant that the trial court did not, as the State asserts, modify his conviction from a Class A to a Class C misdemeanor, but instead recognized that the offense of leaving the scene of an accident with property damage over $400, to which he pled guilty, had been established by our Legislature as a Class C misdemeanor. In fact, a sentence of eleven months and twenty-nine days imposed for conviction of a Class C misdemeanor would be an illegal sentence; and, thus, the judgment would be void, meaning that the misdemeanor conviction questioned in this appeal was not valid. Woods v. State, 928 S.W.2d 52, 54 (Tenn. Crim. App. 1996).

We further agree with the defendant that the trial court considered the appropriate facts and circumstances of his case before finding him a suitable candidate for judicial diversion, and that the record supports the trial court's decision. The decision to grant or deny a qualified defendant judicial diversion lies within the sound discretion of the trial court. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). As such, it will not be disturbed on appeal absent an abuse of discretion. State v. Turco, 108 S.W.3d 244, 246 n.5 (Tenn. 2003). To constitute an abuse of discretion, the record must be devoid of any substantial evidence in support of the trial court's decision. Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168; State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In determining whether to grant diversion, the trial court considers (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. Electroplating, 990 S.W.2d at 229; Bonestel, 871 S.W.2d at 168. A

-4-

trial court should not deny judicial diversion without explaining the factors in support of its denial, and how those factors outweigh other factors in favor of diversion.  Id.

The trial court addressed each of the above factors on the record before granting the defendant judicial diversion. The court noted the defendant's criminal record weighed slightly against him, but found that all other factors weighed heavily in favor of granting judicial diversion. In particular, the trial court found the fact that the defendant had recognized his drug problem and taken steps on his own to overcome it was a factor weighing strongly in his favor.  Regarding this point, the trial court stated:

> His only problem has been his use of drugs, and he . . . is very believable in what he's told the court today that he last used the drugs in the year 2000.  And the – with his social history – of course the record indicates that he is working.  He's gainfully employed and actually advancing in employment, which again is rare for this court. The present condition under the Criminal Sentencing Reform Act is usually considered more in his potential for rehabilitation.  And the court finds that his potential for rehabilitation is excellent, that exceedingly rare, he solved his own problem himself.  He had enough guts to go down and stay with his parents and get out of the situation and get away from the drug situation, and was successful in dealing with his drug problem.  So that is very impressive.  That – that factor weighs strongly in his favor, very strongly.

Following our review, we conclude that the record supports the grant of diversion to the defendant.  Accordingly, we affirm the order of the trial court.

_____
ALAN E. GLENN, JUDGE